Commonwealth *v.* Reeves, Appellant.

Submitted September 16, 1970. Before WRIGHT, P. J., WATKINS, MONTGOMERY, JACOBS, HOFFMAN, SPAULDING, and CERCONE, JJ.

*Daniel C. Barrish,* Assistant Public Defender, for appellant.

*Stewart J. Greenleaf*, Assistant District Attorney, *William T. Nicholas*, Executive Assistant District Attorney, *Parker H. Wilson*, First Assistant District Attorney, and *Milton O. Moss*, District Attorney, for Commonwealth, appellee.

OPINION BY WRIGHT, P. J., December 10, 1970:

Charles L. Reeves was indicted by the Grand Jury in Montgomery County on charges, inter alia, of burglary and robbery. After a jury trial before Judge TOOTHMAN, specially presiding, Reeves was convicted and sentence was imposed. This appeal followed. The factual situation appears in the following excerpt from the opinion below:

"The facts in this case unfold a rather bizarre circumstance. On July 3, 1964, the defendant, identified by both the maid and her employer, Mrs. Irene Gassel, a housewife, residing at 255 Baldwin Lane, Wynnewood, came to the door and asked for a glass of water, stating that he was Mrs. Gassel's old gardener. The maid gave him the water, he then left and returned with two other men in about fifteen minutes, and slipped inside the house undetected. Charles Reeves, the maid testified, came upon her in the back in the laundry room, put something in her back, and took her up to the master bedroom, and another pulled a gun on Mrs. Gassel. The two women and also Mrs. Gassel's daughter, age six, were then tied and gagged and the three men went about stripping the house of its valuables, particularly jewelry, in the amount of approximately Ten Thousand ($10,000.00) Dollars. The defendant took the stand, denied any knowledge or participation in the crime, and claimed that his 'involvement in this crime is through malice'. The defense also called a police officer who testified that at the police-station, while investigating the crime, he had shown

Mrs. Deloatch [the maid] and Mrs. Gassel a picture of the defendant which they recognized as being one of the three men who came into the house that day".

Five contentions are advanced in appellant's brief, the first of which is thus stated: "1. Was appellant unlawfully brought to trial by an information which was determined erroneous, and was his arrest for the crime unlawful and violative of the fundamental notions of due process". The record discloses that the arrest procedure was in accordance with statutory authority. The magistrate had jurisdiction in any event: *Commonwealth ex rel. DiDio v. Baldi,* 176 Pa. Superior Ct. 119, 106 A. 2d 910. Moreover, appellant's complaint may not be raised after indictment: *Commonwealth ex rel. Gaurich v. Keenan,* 181 Pa. Superior Ct. 619, 124 A. 2d 144.

Appellant's second contention is thus stated: "2. Was the in-court room identification of appellant prejudicial and based on a prior overly suggestive photograph viewing of the appellant based on an alleged implication". Although an accidental confrontation in the court house corridor may have occurred in the absence of counsel, Mrs. Gassel and her maid each made a positive in-court identification. No evidence was introduced by the Commonwealth regarding the prior photograph identification, and no objection was made. Cf. *Commonwealth v. Payton,* 431 Pa. 105, 244 A. 2d 644. The trial judge correctly determined that the in-court identification had an independent origin.

Appellant's third contention is thus stated: "3. Was appellant twice placed in jeopardy by the declaration of a new trial and tried again, when the mistrial was the product of the Commonwealth's failure to avail appellant alternate jurors and a voir dire". Appellant was first tried October 17, 1967. A new trial was granted on May 6, 1968. Appellant was again brought to

trial October 23, 1968. One of the twelve jurors who had been selected for this trial did not appear because of a death in the family. Appellant did not wish to proceed with less than twelve jurors and specifically requested a mistrial. A new panel of jurors was picked promptly, and the trial proceeded on October 25, 1968. Appellant may not now complain. Cf. *Commonwealth v. Melton,* 406 Pa. 343, 178 A. 2d 728.

Appellant's fourth contention is thus stated: "4. Was appellant deprived of the right to be tried by his peers and was he deprived of due process by the exclusion of Black Americans from his jury". A challenge to the array must be made not later than five days before the first day of the week the case is listed for trial: Pa. R. Crim. P. 1104(b). Not only did appellant fail to comply with this rule, but also he did not raise the contention in the court below. Cf. *Commonwealth v. Bozzi,* 178 Pa. Superior Ct. 224, 116 A. 2d 290.

Appellant's fifth contention is thus stated: "5. Was appellant deprived of effective assistance of counsel". When such a contention is advanced, the task of the court encompasses both an independent review of the record and an examination of counsel's stewardship in light of the available alternatives, and the burden of demonstrating a constitutional deprivation is on the defendant: *Commonwealth ex rel. Washington v. Maroney,* 427 Pa. 599, 235 A. 2d 349. Appellant asserts (1) that counsel failed to advise him that the absence of one of the twelve jurors "amounted to the inability of the Commonwealth to prosecute his case and would mean an acquittal"; (2) that counsel failed to object to the photographic and subsequent in-court identification; (3) that counsel failed "to insure a voir dire at his last trial"; and (4) "the systematic exclusion of Black Americans and his peers from the jury". Reject-

ing each of these claims, we find, in the words of Mr. Justice ROBERTS, "that there existed a reasonable basis to support counsel's chosen course", and that appellant's rights were fully protected.

In summary, we have made a painstaking examination of this voluminous original record. Each one of appellant's contentions has been carefully considered. We find no merit in this appeal.

Judgment affirmed.

---

DISSENTING OPINION BY SPAULDING, J.:

I respectfully dissent.

The majority has disposed of all the issues expressly raised in appellant's eighteen page holographic prose brief. In my view, however, the very existence of that partly illegible and incomprehensible brief, considered in light of correspondence from counsel and appellant to this Court, raises a further issue: I do not believe appellant has been afforded effective representation of counsel on this appeal.

The Norristown Public Defender, appellant's court-appointed counsel, has apparently limited his services to the xeroxing of appellant's handwritten brief. In his two letters to this Court, counsel stated:

(September 16, 1970)

". . . It was Mr. Reeves' intention that I supply citations, additions and corrections to his Brief. However, I *do not feel that it is the responsibility of the Public Defender Office to work within a limited context created by the client.* Accordingly, I have sent the original of Mr. Reeves' Brief to you as it was sent to me, and, as a courtesy to the Court, I have made the abovementioned photo copies." (Emphasis added.)

(September 17, 1970)

"In accordance with my letter to you yesterday and my conversation with you yesterday, I am notifying

the Superior Court of Pennsylvania that my client, who has retained me through the Public Defender Office of Montgomery County, wishes to have his own holographic brief submitted and desires no additional brief from counsel. I have again verified this through a visit to Graterford Prison yesterday afternoon.

"*Mr. Reeves does not want me to withdraw my appearance in that he wishes me to assist him in procedural aspects of his case.*" (Emphasis added.)

Appellant's letter to the Court stated that he *had* in fact requested counsel's assistance on this appeal, but counsel had told him that "there wasn't too much more he could do" after having received appellant's brief. There is some question whether counsel made any independent effort to study the record or research the issues raised by appellant. It is clear, however, that counsel did not assist in the preparation of this appeal.

I find counsel's procedure in this case unsupportable under the standards enunciated in *Anders v. California,* 386 U.S. 738 (1967), and *Commonwealth v. Baker,* 429 Pa. 209, 239 A. 2d 201 (1968). Counsel gives us no express indication that he regards the appeal as frivolous. If that is his opinion, following *Anders* and *Baker,* he has two alternatives: (1) He can effectively represent his client by presenting the traditional advocate's brief even though he feels the arguments to be of little merit or (2) He can file a petition to withdraw *after* researching and presenting the issues in a written brief. If the latter course is chosen it must be clear that counsel had discussed the case with his client, that he advised his client of his decision to abandon the appeal *and* that he gave his client a copy of the brief and petition in time for the client to present the appeal in propria persona. *Commonwealth v. Baker,* supra, at p. 212, 239 A. 2d at 203. In the instant case, counsel has not followed either alternative.

Further, since appellant did not ask counsel to withdraw and did in fact request assistance, it is not for counsel to decide that he will not work "within a limited context created by the client." The Supreme Court of this State, in a pre-*Anders* case, *Commonwealth ex rel. Cunningham v. Maroney,* 421 Pa. 157, 218 A. 2d 811 (1966), stated: "Had appellant the funds with which to retain counsel, we do not doubt that he would have been able to indulge his grievances, real or fanciful, on appeal. Appellant [an indigent] was entitled to no less." At pp. 160-161, 218 A. 2d at 813.

In this case, where counsel has neither been asked to withdraw by his client, nor requested permission to do so from this Court, it is incumbent upon him to aid in his client's appeal in whatever manner possible. Had appellant made a frivolous, unethical, or totally irrelevant request, counsel, of course, could properly refuse it. That was not the case here.

I would remand the record for the appointment of effective counsel. Cf. *Commonwealth v. Villano,* 435 Pa. 273, 256 A. 2d 468 (1969); *Commonwealth v. Mc-Fall,* 436 Pa. 329, 257 A. 2d 847 (1969).

HOFFMAN, J., joins in this dissenting opinion.